UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------x

Index No. 1:20-CV-10745

Rahul Manchanda,

                **Plaintiff,**

**PLAINTIFF REPLY MEMORANDUM OF LAW TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PRELIMINARY INJUNCTION**

-against-

Internal Revenue Service ("IRS"),
T Fahman, Erica Farrell, Susan
McNamara, Current and Former
Employees of IRS Jane Does 1-10,

                **Defendants.**

--------------------------------x

1.  Plaintiff, Rahul Manchanda, of Manchanda Law Office PLLC, respectfully submits this Reply Memorandum of Law to Defendants Memorandum of Law in Opposition to Preliminary Injunction against Defendants for their continued, wilful, and egregious, during the pendency of this action, ongoing (a) unauthorized disclosure of tax return and tax information per IRC §§ 7431 and 7213, (b) unauthorized collection per IRC § 7433, (c) failure to release tax levies or tax liens unreasonably per IRC § 7432, (d) intentional, negligent, and reckless infliction of physical and emotional distress, and (e) violations of the FTCA for personal injury and property damage, all of which is causing immediate and irreparable injury, loss, and damage.

Preliminary Matter

-1-

2.  As a preliminary matter, opposing counsel Jeffrey Oestericher already put in his Notice of Appearance for all of the Defendants, but now in his footnote 1 confesses that he is still "in the process of seeking authority to represent the individually-named defendants in their individual capacities," even though it is quite obvious from the complaint that Plaintiff is suing these individuals in their official capacities as employees of the United States, the IRS.

3.  This is how opposing counsel Jeffrey Oestericher begins his subterfuge and brief, as well as with his footnote 2 insulting and lambasting Plaintiff for bringing, for the first time in history, certain civil rights lawsuits over the past 20 years, which have actually ameliorated and helped the condition of humanity, advancing the public interest, with such important and timely topics as suing Big Tech (Google) for violations of CDA § 230 and Antitrust Law, suing Planned Parenthood for abusing taxpayer dollars to perform unnecessary and illegal surgeries on poor African-American and Latino women destroying their reproductive systems, suing sensationalist newspapers like the New York Post and their criminally negligent "reporters" like Rebecca Rosenberg for defamatory, slanderous and libelous "fake news," suing alleged members of ANTIFA, BLM, and other leftist terrorist socialist communist networks who have infiltrated local New York City government and then retaliate against conservatives, suing the out of control and

predatory $1.5 trillion dollar student loan industry for their extortionate and corrupt business practices against innocent student borrowers, and other seminal topics which today, dominate the headlines, government agenda, and news, and which really should be his job as an Assistant U.S. Attorney, not a private citizen such as Plaintiff.

Injunctive Relief

3.  Opposing Counsel Jeffrey Oestericher then falsely claims on page 2 that "injunctive relief is not available under any of the statutory provisions that give rise to Plaintiff's claims," even though he is well aware that pursuant to 26 U.S.C. §§ 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436 injunctive relief is most certainly available under each and every one of the statutory provisions that give rise to Plaintiff's claims.

Exhausting Administrative Remedies

4.  Then Opposing Counsel Jeffrey Oestericher attempts to mislead this court by declaring that Plaintiff has failed to "adequately" allege that he exhausted his administrative remedies, when it is well documented that not only has Plaintiff prepared, filed, and responded to the Internal

Revenue Service since 2008 nearly each and every year duly preparing and filing *bona fide* Offers in Compromise, enduring nearly 13 years of the abuse outlined in detail within the complaint and order to show cause, but that he has also filed several written complaints and Standard Form 95 multiple times directly with the Treasury Inspector General for Tax Administration ("TIGTA"), the United States Department of Justice, the Internal Revenue Service, as well as with countless federal and IRS employees, all falling on either deaf ears or no response or denials, wherein Plaintiff duly presented administrative tort claims to the appropriate government agencies for adjudication before filing suit in federal court pursuant to 28 U.S.C. § 2675(a), wherein the FTCA statute of limitations only requires that claims be presented to the appropriate government agency within two years of accrual as per 28 U.S.C. § 2401(b), and wherein claimant must file a federal court complaint within six months of the agency's denial of the administrative tort claim, or can file a federal court complaint anytime six months after presenting the claim if no agency action has been taken as per 28 U.S.C. § 2401(b), all of which is present here (recent separate complaints, with separate legal issues and incidents, filed including but not limited to on 12/28/2018, 01/19/2019, 06/04/2020, 06/07/2020, 07/27/2020, 07/30/2020, and most recently 12/03/2020) (**Exhibit C**). The incidents alleged within

the instant complaint have been carefully tailored to comply and comport with each and every one of these limitations.

Likelihood of Success On The Merits

5.    "A plaintiff seeking a temporary restraining order must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Natera, Inc. v. Bio-Reference Labs., Inc., No. 16 Civ. 9514, 2016 WL 7192106, at *2 (S.D.N.Y. Dec. 10, 2016) (internal quotation marks, citation, and alteration omitted).

6.    "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases).

7.    "The showing of irreparable harm is perhaps the single most important prerequisite for a preliminary injunction." CF 135 Flat LLC v. Triadou SPY N.A., No. 15 Civ. 5345, 2016 WL 2349111, at *1 (S.D.N.Y. May 3, 2016) (internal quotation marks, citation, and alteration omitted).

8.    Under this prong, the movant "must show that the injury it will

suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." <u>NAACP v. Town of E. Haven</u>, 70 F.3d 219, 224 (2d Cir. 1995).

9.   To satisfy this requirement, a movant must demonstrate "that he would suffer irreparable harm if the TRO does not issue." <u>Andino</u>, 555 F. Supp. 2d at 419.

10.  "The district court has wide discretion in determining whether to grant a preliminary injunction." <u>Almontaser v. N.Y.C. Dep't of Educ.</u>, 519 F.3d 505, 508 (2d Cir. 2008) (internal quotation marks and citation omitted) (*per curiam*).

<u>Irreparable Harm</u>

11.  In the Second Circuit, a "showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." <u>Faiveley Transport Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citations omitted).

12.  That harm must be "actual and imminent" rather than speculative. *Id.*

13. Plaintiff has shown irreparable injury by establishing the risk of actual and imminent harm to his health (recent previous heart attack, heart condition, and clinical anxiety) as well as to his constitutional rights including the illegal taking of his property, real and otherwise, in this state and out, which will be described in great deal *infra*.

Constitutional Rights

14. Second, Plaintiff has also shown irreparable injury because, as discussed above, he faces a violation of his constitutional rights.

15. In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. See, e.g., Connecticut Dep't of Envtl. Prot. v. O.S.H.A., 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury." (internal quotation marks and citations omitted)); Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary."); Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996) (clarifying that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm" and a substantial likelihood of success on

the merits of a constitutional violation is not necessary); Sajous v. Decker, No. 18 Civ. 2447, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018).

16. To that end Plaintiff has established the threat of irreparable harm absent the TRO.

17. The Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution forbids the government from depriving a person of life, liberty, or property without due process of law with the imminent and permanent seizure of Plaintiff's personal and law firm bank accounts, real property both within and outside the state, suspension of his driver license, law license, passport, and other takings through illegal, disputed, erroneous, fraudulent, inaccurate, and malicious liens and levies which Plaintiff has officially disputed through Doubt as to Liability (Form 656-L) Offer in Compromise with IRS Holtsville (which apparently Defendants have once again either lost or misplaced or otherwise sabotaged) and another Offer in Compromise (Form 656) appeal which also looks to be incompetently misplaced or unacknowledged.

18. The protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis,

533 U.S. 678, 693 (2001), even though Plaintiff is a U.S. Citizen having been born in New York in 1972.

<u>Balance of Equities and Public Interest</u>

19. The equities and public interest weigh heavily in Plaintiff's favor, first, because Plaintiff faces irreparable injury to his constitutional rights and to his health, and second, the potential harm to the Defendants is extremely limited (estimated as 0.00000857142% of their annual tax collected according to the Internal Revenue Service ("IRS") Data Book published annually by the IRS).

<u>Statutory Injunctions</u>

20. Furthermore, in Federal Court, "[w]here a party seeks a statutory injunction, presumption of irreparable harm often applies, since the party is said to be acting as 'a statutory guardian charged with safeguarding the public interest.'" See <u>City of New York v. Wolfpack Tobacco</u>, No. 13 Civ. 1889 (DLC), 2013 U.S. Dist. LEXIS 129103, at *6 (S.D.N.Y. Sept. 9, 2013).

<u>Federal Tort Claims Act</u>

21. Opposing Counsel Jeffrey Oestericher then desperately and falsely claims on page 5 of his Memorandum of Law that "the

FTCA's limited waiver of sovereign immunity does not, however, apply to any claim arising in respect to the assessment or collection of any tax or custom duty," when he also knows that FTCA § 2680 specifically exempts this type of lawsuit from any government defense of "sovereign immunity." <u>Calderon v. United States</u>, 123 F.3d 947, 948 (7th Cir. 1997) (noting that the FTCA's "waiver of immunity is far from absolute," as "many important classes of tort claims are excepted from the Act's coverage").

<u>Past Injury</u>

22. Opposing Counsel Jeffrey Oestericher continues to mislead this court on page 6 when he declares that "a plaintiff can not rely on a past injury alone" in seeking injunctive relief, going further with his deception by claiming "if unaccompanied by any continuing, present adverse effects," completely and totally ignoring not only Plaintiff's complaint, which clearly alleges that this carnage by the Defendants is most definitely ongoing, current, persistent, and continuous, as was demonstrated in Plaintiff's Motion for Contempt/Sanctions in his **Exhibit B**, but also as recently as January 13, 2021 when Plaintiff received another threatening, harassing, false, erroneous, unauthorized, improper, and characteristically terroristic PCA collection letter (**Exhibit D** which was undoubtedly gleaned from

unauthorized disclosure, unauthorized collection efforts, false, disputed, or fake liens/levies on his personal and law firm bank accounts and real property (again upon information and belief Plaintiff has a pending "Doubt as to Liability" Offer in Compromise (Form 656-L) pending at IRS Holtsville New York, as well as a *bona fide* appeal to a previous Offer in Compromise for "Doubt as to Collectibility" (Form 656) which of course is being characteristically ignored, lost, stolen, not responded to, or otherwise misplaced as usual, as they have done since approximately 2008 each, and every year.

23. The most important issues that opposing counsel Assistant U.S. Attorney Jeffrey Oestericher seems to be forgetting is that these pending OIC's are also supposed to force the IRS (and its predatory PCAs) to cease and desist from, in an unauthorized fashion, collecting, harassing, disclosing, placing and enforcing erroneous, inaccurate, and officially disputed liens, levies, and taxes supposedly owed, disclosing tax information, and other such torts and crimes.

24. If Opposing Counsel needs a reminder, a "Doubt as to Collectibility" OIC is used when you are not disputing the amount of the tax debt that is owed...but a "Doubt as to Liability" OIC is used when you are actually disputing the amount of the tax debt owed, or whether the tax debt should even exist, at all.

25. So, in stark contrast to opposing counsel Jeffrey Oestericher's assertions, this action is not simply about "past injury unaccompanied by continuing, present adverse effects" (<u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974), and Plaintiff can certainly "show a likelihood that he will be injured in the future." <u>Shain v. Ellison</u>, 356 F.3d 211, 215 (2d Cir. 2004).

<u>Injunctive Relief Revisited</u>

26. As was already described *supra*, while 26 U.S.C. § 7213 does in fact establish criminal liability for unauthorized disclosure of tax returns or return information, certainly this court can take injunctive relief to stop it once it is brought to its attention, as in this lawsuit.

27. With regard to 26 U.S.C. § 7431 we have already advised opposing counsel and this court that injunctive relief is certainly available under any one of the 14 exceptions to the Tax Anti-Injunctive Act, and under 26 U.S.C. § 6103 as in the case here, where Plaintiff has more than fully complied with these exceptions and requirements.

28. The same goes for 26 U.S.C. §§ 7432 and 7433 because as was explained above, Plaintiff has fully exhausted all administrative remedies and more, repeatedly, since 2008 all the way up until 2020, but he also satisfied the requirements

of substantial likelihood of success on the merits and has shown "irreparable harm" to his constitutionally protected life, liberty and property rights as described above, if a preliminary injunction is not granted.

29. Indeed Defendant IRS is even violating its own prohibition on unauthorized collections, liens, levies, and other torts while they are entertaining Plaintiff's currently pending OIC disputes as to the amount of the tax debt, liens and levies owed if any, whether the tax debt should exist at all, or whether or not the dollar amount is even collectible.

30. The only way to stop this charging, frothing at the mouth, lying, thieving rabid bull known as the IRS from continuing to break federal and state law, is for a U.S. District Court Judge to enjoin this behavior until we can all figure this out, in this proceeding, before they can be allowed to commit actual, imminent, and irreparable harm to Plaintiff - there is simply no other way.


Unauthorized Disclosure

31. Opposing Counsel Jeffrey Oestericher then complains starting on page 14 of his Memorandum of Law that "plaintiff has advanced nothing more than conclusory allegations that disclosures occurred," completely ignoring the "tip of the iceberg"

detailed evidence, information, and exhibits contained within the 4 corners of the complaint that, even without full Discovery conducted, that for example, tax return and tax information and tax correspondence was recently mailed to his CPA Marc Albaum's "friend," at a completely different address, who managed to flag him down while spotting him on the street and delivering it to him, that scores of named and described individuals, enemies, business competitors, political rivals, ex-employees, and ex-relationships have advised Plaintiff that they have received and communicated about such unauthorized disclosure and tax information through private investigators and other such undesirables such as scores of "PCAs" directly from Defendant IRS and its criminally incompetent and dishonest employees.

## Unauthorized Liens

32. As was already described above, opposing counsel ignores the fact that Plaintiff had already prepared and filed an official "Doubt as to Liability" Form 656-L with IRS Holtsville New York, which completely and totally disputes the tax amount owed, or whether the tax debt should even exist at all - this also does not address the fact that Plaintiff has appealed his latest Offer in Compromise arbitrary and capricious denial wherein all liens, collection activity, and levies must cease pending adjudication - analogous to a federal Bankruptcy Stay -

but what happens when the IRS and its employees deliberately, negligently, recklessly, or intentionally lose Plaintiff's applications, petitions and files, or sabotage his ability to question or challenge Defendants' fake and fraudulent accounting techniques, over a period of nearly 15 years, dishonestly multiplying and increasing his hitherto unknown tax liability each and every year with massive and draconian fees, penalties, and other unknown/unchecked assessments backed up by clear and present danger, and actual and imminent threats to seize his bank accounts both personal and professional, suspend or revoke his professional law and real estate broker and driver licenses, as well as his passport for money that he doesn't even owe, or tax amounts, liens and levies that do not exist - clearly emergency judicial intervention and injunction is now required.

Intentional Infliction of Emotional Distress

33. As if the aforementioned pain and suffering described above was not enough, replete with heart attacks and clinical anxiety as health condition fallouts, let alone severe violations of Plaintiff's constitutional rights to life, liberty and property, if not the "irreparable harm" already described, opposing counsel Jeffrey Oestericher has the nerve to challenge Plaintiff's federal and state tort claims sounding in negligent and intentional infliction of emotional, mental and physical

distress.

34. Opposing Counsel does not believe that the aforementioned above described conduct, as well as described in the complaint, motion for contempt, and exhibits rise to the level of "extreme and outrageous conduct," but this is again a question of disputed fact and law meant for adjudication only by this Court.

35. Although decisions of the New York Court have, on occasion, included language indicating that it is, they have also clarified that "extreme and outrageous conduct" is not an essential element of a cause of action alleging negligent infliction of emotional distress, which has also been claimed here by Plaintiff.

36. In its most recent discussion of negligent infliction of emotional distress, the Court of Appeals stated: "[a] breach of the duty of care resulting directly in emotional harm is compensable even though no physical injury occurred when the mental injury is a direct, rather than a consequential, result of the breach and when the claim possesses some guarantee of genuineness" (Ornstein v New York City Health & Hosps. Corp., 10 NY3d 1, 881 N.E.2d 1187, 852 N.Y.S.2d 1 (2008); see Baumann v Hanover Community Bank, 2012 NY Slip Op 07947 [100 AD3d 814]).

37. In sum, a breach of a duty of care "resulting directly in emotional harm is compensable even though no physical injury occurred" (Kennedy v. McKesson Company, 88 A.D.2d 785 (N.Y. App. Div. 1982); see Ornstein v New York City Health & Hosps. Corp., 10 NY3d at 6; Baumann v Hanover Community Bank, 100 AD3d at 816; Clarke v. Wallace Oil Company, 284 A.D.2d 492, 727 N.Y.S.2d 139 (N.Y. App. Div. 2001)).

Irreparable Harm Revisited

38. As was already indicated above, Plaintiff has already demonstrated the danger of irreparable harm that is "neither remote nor speculative, but actual and imminent, and one that can not be remedied if a court waits until the end of proceedings to resolve the harm." Freedom Holdings Inc. V Spitzer, 408 F.3d 112, 114 (2d Cir. 2005).

39. Clearly the imminent emptying or seizure of Plaintiff's personal and law firm bank accounts, suspension of his professional law and real estate broker licenses, suspension of his passport, revocation of his driver license, based on fraudulent, erroneous, fictitious, officially disputed, and malicious liens and levies for dollar amounts in dispute, if even existing at all, satisfy this "irreparable harm" requirement.

40. When the subject matter of the case concerns a specific fund, courts will find irreparable injury even though the plaintiff seeks monetary relief.

41. In these cases, the courts grant the injunction because there is harm to the property, not to the value of the property. <u>Genger v. Genger</u>, 2010 NY Slip Op. 33929 (Sup. Ct. N.Y. County July 2, 2010); <u>Ma v. Lien</u>, 198 A.D.2d 186, 604 N.Y.S.2d 84 (1st Dept. 1993) (holding that if "the requested relief is not granted, a substantial amount of money may be dissipated or otherwise unavailable for recovery").

<u>Balance of Equities Revisited</u>

42. To satisfy the third prong of the preliminary injunction standard, the movant must establish that the injury it would sustain is more burdensome to it than the harm that would be caused to the non-movant through the imposition of the injunction. <u>Winter Bros. Recycling Corp. v. Jet Sanitation Serv. Corp.</u>, 23 Misc. 3d 1115[A], 2009 NY Slip Op. 50753[U] (Sup. Ct. Nassau County Mar. 13, 2009); <u>Fischer v. Deitsch</u>, 168 A.D.2d 599, 601 (2d Dept. 1990).

<u>Current And Imminent Harm And Not Simply Past Injury/Harm</u>

43. Even while this action is pending, and upon information and

belief his Offers in Compromise for Doubt as to Collectibility and Doubt as to Liability are pending with the Defendant IRS, Plaintiff is continuing to get barraged, harassed, intimidated, threatened, called, emailed, texted on his personal cellphone number, law firm phone number and address, home telephone number and address, personal and business emails, at all hours of the day and night and on weekends, in conjunction with Private Collection Agencies ("PCA") with such telephone numbers as (720) 381-3267 and (303) 597-1753 in complete and total violation of the Fair Debt Collections Practices Act ("FDCPA") and Internal Revenue Code § 6304(b), which patterns itself on the FDCPA § 1692e (**Exhibit B**).

44. IRC Code § 6304 provides that the IRS "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax."

45. The non-exclusive list of prohibited actions is as follows: (a) the use or threat of the use of violence or other criminal means to harm the physical person, reputation, or property of any person; (b) the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader; (c) causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously

with the intent to annoy, abuse, or harass any person at the called number; and (d) placing telephone calls without meaningful disclosure of the caller's identity, as expressly required under the FDCPA § 1692(c).

46. IRC § 7602(c) of the tax code addresses contacts with third parties, and other than the general prohibition against disclosing confidential information under IRC § 6103, the only other *proviso* regarding third party contacts is found in IRC § 7602(c)(1), which prohibits the IRS from contacting any third party in connection with "the determination or collection of any tax" unless the IRS first provides "reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made," which was never done here.

47. IRC § 7602(c)(2) states that the IRS "shall periodically provide to a taxpayer a record of persons contacted...by the Secretary with respect to the determination or collection of the tax liability of such taxpayer...Such record shall also be provided upon request of the taxpayer."

48. There is an affirmative duty in the statute to provide a list to the taxpayer of who the IRS contacted, but Plaintiff has never seen the IRS or other Defendants provide such a list even when this was requested.

49. While the FDCPA allows a person victimized by violations of any provision of the Act to sue a PCA for such violation, and it is conceded that generally no such relief is available under the FDCPA regarding violations of law by the IRS, however, Internal Revenue Code § 7433 (which is one of the claims of this lawsuit) allows taxpayers to sue the IRS if "any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title" while in the act of collecting taxes.

50. While it is true that the FDCPA does not apply to or bind the IRS in any way, the Internal Revenue Code certainly does, and the individual code sections mentioned above and in this lawsuit, prohibit IRS abuse in the collection process.

51. Moreover, with the addition of the Taxpayer Bill of Rights as a statement of statutory rights under the code and the affirmative duty of the IRS Commissioner to ensure that IRS employees are familiar with and act in accordance with those rights, we have substantial leverage against IRS abuse.

52. The Taxpayer Bill of Rights as set forth in Internal Revenue Code § 7803(a)(3) provides: (a) the right to be informed, (b) the right to quality service, (c) the right to pay no more than the correct amount of tax, (d) the right to challenge the

position of the IRS and be heard, (e) the right to appeal a decision of the IRS in an independent forum, (f) the right to finality, (g) the right to privacy, (h) the right to confidentiality, (i) the right to retain representation, and (j) the right to a fair and just tax system.

53. As was discussed in the complaint, the relief available under the tax code is substantially greater than that which is available under the FDCPA.

54. IRC § 7433(b) provides that if an IRS employee is found liable for violating any provision of the tax code or regulations in the act of collecting taxes, the victim may recover the lesser of: $1,000,000 in the case of any deliberate reckless or intentional violation of the tax law, $100,000 in the case of mere negligence leading to a violation of the tax law, or the sum of: (a) the actual, direct economic damages sustained by the taxpayer as a proximate result of the reckless or intentional or negligent actions of the IRS employee, and, (b) the costs of the action.

55. The IRS Restructuring and Reform Act of 1998 added code IRC § 6304 entitled, "Fair Tax Collection Practices."

56. That section lifts some of the provisions of the FDCPA and incorporates them directly into the Internal Revenue Code.

57. As such, the limitations and prohibitions expressed in code §6304 are binding on all IRS employees in the act of collecting taxes.

58. As was stated above, Section 6304(a) patterns itself on FDCPA §1692(d).

59. IRC § 6304(a) provides that, "without the prior consent of the taxpayer given directly to the Secretary or the express permission of a court of competent jurisdiction, the Secretary may not communicate with a taxpayer" in the act of collecting an unpaid tax as follows: (a) at any unusual time or place, or a time or place known, or which should be known, to be inconvenient to the taxpayer, (b) if the IRS knows the taxpayer is represented by counsel authorized to practice before the IRS and has knowledge of, or can readily ascertain such person's name and address, unless counsel fails to respond within a reasonable period of time to a communication from the IRS, or unless counsel consents to direct communication with the taxpayer; or (c) at the taxpayer's place of employment if the IRS knows or has reason to know that the taxpayer's employer prohibits the taxpayer from receiving communications at work.

## Conclusion

60. Plaintiff requests that this Honorable Court grant the relief

sought in this Complaint, in addition to the Defendants committing gross violations of IRS Codes 26 U.S.C. §§ 7433, 7432, 7431, and 7213 with their coordinated misconduct, unauthorized disclosure to countless individuals over nearly 15 years such as Plaintiff's political enemies, business competitors, exes, private investigators, fired/ terminated/ never retained/ suspended CPAs and Accountants, private collections agencies, tortious and illegal collections activity, deception, abuse of office, gangstalking, extortion, blackmail, harassment, aggravated harassment, discrimination, threats, intimidation, malice, arbitrary and capriciousness, sloppiness, dishonesty, trickery, manipulation, lack of professionalism, losing documents, purposefully mailing correspondence to wrong addresses or not at all in order to get them delayed or lost, misconduct, abuse, waste, fraud, personal injury, property damage, illegal liens and levies, gross incompetence, negligence, recklessness, and other intentional and malicious actions and torts in the administration of Plaintiff's taxes, for nearly 15 years.

61. Plaintiff seeks to also ultimately obtain permanent injunctive relief, restitution, refunds, actual and punitive damages, civil money penalties, and other relief for Defendants' countless and multiple violations of federal and state tort and tax laws, and for violating corresponding New York State laws governing the illegal, unlawful, deceptive, dishonest, unfair,

fraudulent, and incompetent behavior of the Internal Revenue
Service and its employees/agents.


**WHEREFORE,** it is respectfully requested that this Court grant
Plaintiff's requested relief against Defendants, the legal and
equitable relief requested in this lawsuit in its entirety, and such
other further relief as this Honorable Court deems fair and equitable
under the circumstances.


**Dated:** January 15, 2021
New York, New York

_____
Rahul Manchanda, Esq.
Manchanda Law Office PLLC
30 Wall Street, 8th Floor
New York, NY 10005
Tel: (212) 968-8600
Fax: (212) 968-8601