UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

RAHUL D. MANCHANDA,

                              Plaintiff(s),            Civ Action No.

   -against-                               1:20-cv-10745-ALC

INTERNAL REVENUE SERVICE, UNITED STATES
GOVERNMENT, T. FAHMAN, ERICA FARRELL,    OPPOSITION TO
SUSAN MCNAMARA, CURRENT AND FORMER    DEFENDANT'S MOTION TO
EMPLOYEES OF IRS JANE DOES 1-5,             DISMISS

                             Defendant(s).

------------------------------------------------------------------------x


**FAZZIO LAW OFFICES**

By: */s/ John P. Fazzio*
JOHN P. FAZZIO, ESQ.
305 Broadway
7th Floor, Suite 19
New York, NY 10007
Phone: (201) 529-8024
Fax: (201) 529-8011
Email: jfazzio@fazziolaw.com
*Attorney for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ………………………………...……………………… 1

FACTUAL BACKGROUND …………………………………...…………………… 6

LEGAL FRAMEWORK ……………………………………...…………………… 8

   I.  Standard on Motion to Dismiss ………………………………..………..... 8

  II.  Relevant Statutes ……………………………………….……………….. 8

ARGUMENT ……………………………………………...…………………… 9

   I.  Plaintiff's § 7433 Claim …………………………………..……..... 9

      a.  Plaintiff Properly Exhausted Administrative Remedies …………..………..... 9

      b.  Plaintiff Plead Sufficient Facts to State a Plausible Claim for Relief Under Section 7433 …………...……………….……………………………..………... 11

  II.  Plaintiff's § 7431 Claim …………………………………..……..... 9

      a.  § 7431 Is Not the Exclusive Remedy for <u>*Any*</u> Unauthorized Disclosure Claims…17

      b.  Plaintiff Plead Sufficient Facts to State a Plausible Claim for Unauthorized Disclosure ……...……………….……………………..………... 19

  III.  Plaintiff's FTCA Claim Is Actionable ……….……….……………..……..... 19

      a.  Plaintiff's FTCA Claim is Not Barred by 28 U.S.C. § 2680(c) ………………20

      b.  Plaintiff Exhausted Administrative Remedies …….……………….…….…... 23

      c.  Plaintiff States a Viable Claim for Negligent or Intentional Infliction of Emotional Distress Under New York State Law ………….……………….……..……... 23

CONCLUSION …………………………………………….……….….. 25

# TABLE OF AUTHORITIES

Page[s]

## CASES

*Anonymous B. v. Anonymous R.*
37 Misc. 3d 756 (1962)....................................................................................................... 13, 16

*Barrett v. United States.*
51 F.3d 475 (5th Cir. 1995) ......................................................................................... 18

*Barron v. IRS.*
Cv-97-271-JD (Dist. N.H. 1998)....………………………........................................ 15, 16

*Broad v. DKP Corp.*
No. 97 Civ. 2029, 1998 WL 516113 (S.D.N.Y. Aug. 19, 1998) ..…………..………………....... 11

*Cameron v. IRS.*
773 F.2d 126, 129 (7th Cir. 1985) ………………………..………............................................. 9

*Council v. Burke.*
713 F. Supp 181, 185 (M.D.N.C. 1988) …………………………............................................... 14, 15

*Fischer v Maloney,*
43 NY2d 553 (N.Y. 1978) ………..…………...................................................................... 23

*Galen v. United States.*
18 Civ. 2183, 2020 LEXIS 46108 (S.D.N.Y.) …..…………………………….................................. 2

*Greater New York Hospital Assoc. v. United States.*
No. 98 Civ. 2741, 1999 WL 1021561 (S.D.N.Y. Nov. 9, 1999) 932 F.2d 51, 61 (1st Cir. 1991) …….….... 2

*Guadagno v. Wallack Ader Levithan Assoc.*
932 F. Supp. 94 (S.D.N.Y. 1996) ………..….......................………………................................ 2

*In re Genung.*
220 B.R. 505, 506 (Bankr. N.D.N.Y. 1998) …………………............................................... 13

*In re Mitchell.*
633 F.3d 1319 (11th Cir. 2011) …………...…………………….................................................... 11

*Johnson v. Sawyer.*
980 F. 2d 1490 (5th Cir. 1981) …………...……………………….................................... 21, 22

*Jones v. United States.*
9 F. Supp. 2d 1119 (D. Neb. 1998) …………...………………….................................... 18

*Kamen v. American Tel. & Tel. Co.*
791 F.2d 1006 (2d Cir. 1986) …….…............................................................................... 13

*Lane v. Marine Midland Bank, N.A.*

112 Misc. 2d 200, 203, (1982) ................................................................................................ 23

*Long v Beneficial Fin. Co.*
39 A.D.2d 11, 330 N.Y.S.2d 664 (App. Div., 4th Dep't. 1972) ............................................... 24

*McMillen v. United States Dep't of Treasury.*
960 F.2d 187 (1st Cir. 1991) .................................................................................................. 9

*Morris v. Rochdale Vil., Inc.*
2011 N.Y. Misc. LEXIS 5969, *15, 2011 (Queens Cty 2011) ……...……………….....……….....… 23

*Shwarz v. United States.*
234 F.3d 428 (9th Cir. 2000). ………………………………………………………....…. 17

*Ward v. United States.*
973 F. Supp. 996 (D. Colo. 1997) ………………………………………………....…… 18

**STATUTES**

26 U.S.C. § 6103 ................................................................ 10, 211, 13, 17, 18, 19, 21, 22

26 U.S.C. § 6304 ............................................................................................... 10, 11

26 U.S.C. § 6331 ........................................................................... 5, 7, 10, 11, 12

26 U.S.C. § 7432 .................................................................................................. 2, 10

26 U.S.C. § 7431 ........................................................................... 7, 9, 10, 17, 18, 19

26 U.S.C. § 7433 ……......................................................... 2, 3, 4, 5, 8, 9, 10, 11, 13, 17, 18

26 U.S.C. § 7602 ............................................................................................... 10, 11

**REGULATIONS**

26 C.F.R. 301.7122-1 ............................................................................................. 7, 11

26 C.F.R. § 301.7432-1 ............................................................................................... 10

26 C.F.R. § 301.7433-1 .............................................................................. 2, 3, 4, 5, 6, 9, 10

**INTERNAL REVENUE MANUAL**

IRM § 8.23.1.2 (04-18-2016) ..................................................................................... 7

**FORMS**

Form 656 ........................................................................................................... 12

## RULES

Federal Rule of Civil Procedure 12(b)(1)....................................................................................... 1

Federal Rule of Civil Procedure 12(b)(6)....................................................................................... 1

## CONGRESSIONAL LEGISLATIVE HISTORY

IRS Implementation of Taxpayers' Bill of Rights:
Hearing Before the Subcomm. on Private Ret. Plans & Oversight of the Internal Revenue Serv. of the S.
Comm. on Fin., 101st Cong. 18 (1990) ............................................................................... 13, 14

Omnibus Taxpayer Bill of Rights, Pub. L. 100-647, 102 Stat. 3730 ........................................... 9

Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452 ....................................................... 9

## NEWS ARTICLES

Robin Lord, *Settlement Gives Woman Peace After Husband's Suicide*, CAPE COD TIMES (May 5, 1998)
.................................................................................................................................... 15, 16, 17

Shawn Pogatchnik, *IRS 'Made Me Widow,' Witness Tells Senators*, L.A. TIMES (Apr. 7, 1990) …...……14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

RAHUL D. MANCHANDA,

                                Plaintiff(s),               Civ Action No.

   -against-                                      1:20-cv-10745-ALC

INTERNAL REVENUE SERVICE, UNITED STATES
GOVERNMENT, T. FAHMAN, ERICA FARRELL,     OPPOSITION TO
SUSAN MCNAMARA, CURRENT AND FORMER     DEFENDANT'S MOTION TO
EMPLOYEES OF IRS JANE DOES 1-5,                DISMISS

                                 Defendant(s).

------------------------------------------------------------------------x

        Plaintiffs, Rahul D. Manchanda (the "Plaintiff"), by his attorney John P. Fazzio, Esq. of

Fazzio Law Offices, LLC respectfully submits this memorandum of law in support of their

opposition to Defendant's Motion to Dismiss[1] the March 17, 2021 Amended Complaint, ECF No.

28 ("Amended Complaint" or "Am. Compl."), pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

        This is a case of abuse of power.  The Internal Revenue Service ("IRS") is bound by the

Internal Revenue Code ("IRC") and the Taxpayer Bill of Rights to protect taxpayers from

government overreach in the form of abusive collection practices.  Defendant attacks the Amended

Complaint on primarily procedural grounds and argues that the formal protests serving as

Plaintiff's administrative claims are deficient in several respects. Def.'s Mot. at 9-10.  In doing so,

---

[1] Hereinafter abbreviated as Def's Mot.

Defendant attempts to place substance over form in a failed attempt to escape review of the facts which make out Plaintiff's claim.

For instance, Defendant recognizes that while a Form SF-95 is not regularly used to file "administrative claims" with the IRS for abusive tax collection under IRC § 7433, there is nothing preventing the use of this form for that purpose so long as the statutorily required information under 26 C.F.R. § 301.7433-1(e) is included. Def's Mot. at 9 (noting that "even if the Form SF-95 could be used to present a section 7433 claim [which it was], and even if Plaintiff had provided all of the requisite information [which it did], … he still would have failed to exhaust his administrative remedies for two additional reasons…"). Defendant then makes two dazzlingly hyper technical but misguided points in support of this flawed theory: (1) the administrative claim was not forwarded [directly] to the Area Director pursuant to 26 C.F.R. § 301.7433-1(e) [which it was]; and (2) that the administrative claim did not fit into the "Goldilocks Zone" because it was either premature or untimely [it was neither]. *Id*. at 9-10. Defendant's position is baseless.

The Amended Complaint alleges that both administrative claims were forwarded to the Area Director. Am. Compl. ¶¶ 24, 33. Defendant relies on the Declaration of Alex Lau ("Lau Declaration") to make a "factual challenge"[2] to this allegation, stating that "ICS did not contain a record of any administrative claim filed by Plaintiff under section 7432 or 7433." Lau Decl. ¶ 4. Factual challenges include "[c]hallenge[s] whether sufficient facts exist for the court to determine that it has jurisdiction to hear the plaintiff['s] claims." *Greater New York Hospital Assoc. v. United States*, No. 98 Civ. 2741, 1999 WL 1021561, at *4 (S.D.N.Y. Nov. 9, 1999) (Carter, J.). Since a

---

[2] In a factual challenge, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations; rather, the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996) (Rakoff, J.), *aff'd*, 125 *354 F.3d 844, 1997 WL 609007 (2d Cir.1997) (citations omitted); see also *Broad v. DKP Corp.*, No. 97 Civ. 2029, 1998 WL 516113, at *3 (S.D.N.Y. Aug. 19, 1998) (Preska, J.), *aff'd*, 182 F.3d 898, 1999 WL 447632 (1999) (citing Guadagno).

factual jurisdictional challenge is involved, the court is permitted to refer to evidence extrinsic to the pleadings. See *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  Here, Plaintiff has provided extrinsic evidence that the original state court lawsuit (which was attached to Plaintiff's administrative claims) and which contained the administrative claim as an exhibit, *Rahul Manchanda v. Internal Revenue Service* (Index No.: 150320/2019), was mailed to the Area Director at 290 Broadway, New York, NY 10007 by priority mail[3].  *See* **Ex. X**, State Court Dkt. No. 9, Proof of Service on IRS Area Director of January 25, 2019, Pgs. 2-4; Manchanda Aff. ¶¶ 3-5; Am. Compl. ¶¶ 24, 33**.**  In addition to the mailings required by 26 C.F.R. § 301.7433-1(e), the taxpayer went above and beyond the formal legal requirements of the regulations by attempting to serve the Area Director with a process server but was unable to effectuate service of process due to the government shutdown.  *Id.*  In *Galen v. United States*, 18 Civ. 2183, 2020 LEXIS 46108 at *25-28 (S.D.N.Y.) (Tomlinson, K.) the Court denied an IRS Motion to Dismiss on the exact same grounds on nearly identical facts, stating:

> "Defendant argues that it does not appear from the allegations plead by Plaintiff that the formal protests were addressed to the 'Area Director, Attn. Compliance Technical Manager of the Eastern District of New York," that they included a description of the injuries incurred by Plaintiff as a result of the IRS collection activity, or that the protests included the dollar amount of the claim. *See id.* Read broadly, the PAC appears to assert that Plaintiff sent a written formal protest to the Holtsville Office of Appeals regarding both the 2009 disallowance and second Notice of Levy on May 11, 2016. * * * The PAC further alleges that Plaintiff sent additional letters to the Holtsville office, either directly or indirectly through the IRS Taxpayer Advocate Service, regarding the impact the levy had on Plaintiff's credit, the closing of Plaintiff's business as a result of the levy, and compensation for the violation of Plaintiff's rights. *Id.* ¶ 105. * * * Liberally construing the pro se Plaintiff's allegations together, an inference can be drawn that the formal protests and supplemental letters were properly sent to the Area Director of the area in which Plaintiff currently resides and that those communications described the injuries incurred by Plaintiff, the grounds for the claim, and the Plaintiff's taxpayer information. *** **While factual disputes may arise regarding the nature and substance of the formal protests and supplemental letters and the proper Area**

---

[3] *See* List of IRS Area Directors, *available at,* https://www.irs.gov/pub/irs-drop/rp-02-44.pdf (last viewed, May 4, 2019).

<u>**Director to whom the purported administrative claim should have been sent, these issues are factual in nature and are not properly resolved at the motion to dismiss stage of the litigation.**</u> Accordingly, the Court respectfully recommends that the Defendant's motion to dismiss Plaintiff's unauthorized collection claim for damages under 26 U.S.C. § 7433(a) -- based on Defendant's alleged negligent and reckless disregard of 26 U.S.C. § 7803(a)(3) and 26 U.S.C. § 6611 — be DENIED."

Thus, the argument that the administrative claims at issue are procedurally flawed due to a lack of proper notice is premature at the Motion to Dismiss stage, and is ultimately unavailing in any event, since the administrative claims *<u>did contain</u>* all the required information and *<u>were served</u>* on the Area Director in the local New York District*, just down the street from the federal courthouse. Am. Compl. ¶¶ 24, 33; Manchanda Aff. ¶¶ 3-5.

As to the Defendant's first misguided attack on the administrative claims (Def's Mot. At 9-10), the issue under 26 C.F.R. § 301.7433-1(e) is notice, and if the IRS was on notice of the administrative claim, albeit having lodged the claim in their FTCA databases as opposed to their 7433 databases, then the IRS was nonetheless properly put on notice of and lodged the administrative claim. Declaration of Mary-Ellan Krcha ("Krcha Declaration") ¶¶ 3, 6-7 (affirming that the First Administrative Claim was received by the IRS on March 29, 2019 and denied on May 31, 2019 and verifying that "[a]ny such administrative claim received by any Internal Revenue Service office, wherever located, is required to be forwarded to my office, in Washington, D.C."); *see also,* Declaration of Alex Lau ("Lau Declaration") ¶ 3.

As to the Defendant's second misguided attack on the administrative claims (Def's Mot. At 9-10), the pleadings clearly demonstrate the administrative claim was timely.  The Complaint states that, **"*[i]n the last two years [leading up to the filing of the Complaint], between December 20, 2018 and the filing of this action on December 20, 2020*, there have been a number of instances where IRS agents have recklessly engaged in "Abusive Tax Collection"** by making [repeated] collection calls to Plaintiff in his home and place of business, harassing Plaintiff's staff

by disclosing information about his tax debts in an unauthorized manner, and undertaking other collection activity while a pending Offer-in-Compromise was under consideration." Am. Compl. ¶ 32.  The Complaint alleges that despite a valid, processable OIC being on file since September 2018, collection activity improperly and illegally continued from October 15, 2018 through January 19, 2019 (and thereafter, through the filing of the Complaint) in violation of 26 U.S.C. § 6331(k)(1)(A)-(B). Am. Compl. ¶¶ 24, 32, 33, 44.  Neither the First Administrative Claim nor the Complaint allege that the collection activity occurring on October 15, 2018 was an isolated incident, but rather that it was an ongoing continuing problem, as verified by the fact that a Second Administrative Claim was filed on June 10, 2020 (Am. Compl. ¶ 34) for continued collection activity through September 13, 2019. Am. Compl. ¶ 35.

The Complaint was filed on December 20, 2020.  The first date on which administrative remedies were exhausted for the First Administrative Claim was any time on or after the May 31, 2019 denial of the administrative claim. Krcha Declaration ¶¶ 6-7; 26 C.F.R. § 301.7433-1(d)(i)[4]. The last date on which to file suit within the applicable two-year statute of limitations period would be two years from the accrual of the claim on January 19, 2019 (Am. Compl. ¶¶ 24, 33.)—which would give Plaintiff until January 19, 2021 to file suit. *See* IRC 7433(d)(3)[5].  Thus, as in Goldilocks and the Three Bears, the claim is not time-barred (too hot—after January 19, 2021) or premature (too cold—before May 31, 2019); it is just right, falling squarely in between those two dates.

---

[4] "(d) **No civil action in federal district court prior to filing an administrative claim** - (1) Except as provided in paragraph (d)(2) of this section, **_no action under paragraph (a) of this section shall be maintained in any federal district court before the earlier of the following dates_:**
(i) **_The date the decision is rendered on a claim filed in accordance with paragraph (e) of this section_**; or . . ." (Emphasis added).

[5] "**(3) Period for bringing action**
Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy **and may be brought only within 2 years after the date the right of action accrues.**" (Emphasis added).

As to the Second Administrative Claim, filed on June 20, 2020 (Am. Compl. ¶¶ 24, 34) the first date on which administrative remedies were exhausted for the Second Administrative Claim was any time six (6) months after the filing of the claim, or any time on or after December 20, 2020. Krcha Declaration ¶¶ 6-7; 26 C.F.R. § 301.7433-1(d)(ii).[6]  Since the Complaint was filed on December 20, 2020, it was filed exactly six (6) months to the day after the original filing of the administrative claim on June 20, 2020. The last date on which Plaintiff could file suit within the applicable two-year statute of limitations period would be two years from the accrual of the claim on June 20, 2020 (Am. Compl. ¶¶ 24, 33.)—which would give Plaintiff until June 20, 2022. *See* IRC 7433(d)(3).[7] Thus, as in Goldilocks and the Three Bears, the claim is not time-barred (too hot—after June 20, 2022) or premature (too cold—before December 20, 2020); it is just right, falling squarely in between those two dates.

Each of Plaintiff's claims is legally sustainable on procedural grounds, is timely, and should proceed to a trial on the merits.

## FACTUAL BACKGROUND

On or about September 5, 2018, Plaintiff filed Offers-in-Compromise ("OIC(s)" or "Offer(s)") with the Internal Revenue Service ("IRS") and with the New York State Department of Taxation and Finance ("NYSDTF"). Am. Compl. ¶ 14.  Importantly, IRC § 6331(k)(1)(A)-(B) provides that no levy may be made: (A) during the period that the offer is pending, and (B) for an

---

[6] "(d) **No civil action in federal district court prior to filing an administrative claim** - (1) Except as provided in paragraph (d)(2) of this section, ___no action under paragraph (a) of this section shall be maintained in any federal district court before the earlier of the following dates___:

\* \* \*

(ii) ___The date six months after the date an administrative claim is filed in accordance with paragraph (e) of this section.___" (Emphasis added).

[7] "**(3) Period for bringing action**

Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy **and may be brought only within 2 years after the date the right of action accrues.**" (Emphasis added).

additional 30 days after the offer is rejected, and during the time any appeal of the rejection is pending. *See also,* IRM § 8.23.1.2 (04-18-2016), **"Suspension of Levy While Offer is Pending"** provides additional detail. Under Treasury Regulation 301.7122-1(d)(2) an offer becomes "pending" for § 6331(k) purposes once it is processed. Am. Compl. ¶ 17.

The filing of an OIC is important because it halts all IRS collection activity (*i.e.*, levying of bank accounts & garnishing of wages) while the Offer is pending and under consideration.[8] Despite Plaintiff and his Accountant, Marc Albaum, each following up with the IRS by phone, calling the various Service Centers, waiting on hold for hours, and speaking to multiple different representatives who were unable to provide a definitive answer, neither the Plaintiff nor his Accountant was able to receive confirmation of filing receipt of Plaintiff's OIC with the IRS. Am. Compl. ¶ 16.

In the event the OIC is rejected and is not processed, the IRS must promptly send a rejection notice to apprise the taxpayer of their status. Am. Compl. ¶ 17. This notice is important because a rejection deprives the taxpayer of his "Suspension of Levy" and other collection stoppages. *Id.* Failing to provide such notice violates a taxpayer's procedural and substantive due process rights under the Taxpayer Bill of Rights ("TBOR").[9]

---

[8] *See* Topic 204, Offers in Compromise, subsection "Suspension of Collection," *available at* https://www.irs.gov/taxtopics/tc204 (last visited, May 4, 2021).

[9] Article 1 of the Taxpayer Bill of Rights is the "Right to Be Informed," *available at* https://www.irs.gov/newsroom/taxpayer-bill-of-rights-1 (last visited, May 4, 2021). *See also*, IRS Publication 1, Your Rights as a Taxpayer. Section 7803(a)(3) of the Internal Revenue Code provides a list of the ten rights: "the right to be informed," "the right to quality service," "the right to pay no more than the correct amount of tax," "the right to challenge the position of the Internal Revenue Service and be heard," "the right to appeal a decision of the Internal Revenue Service in an independent forum," "the right to finality," "the right to privacy," "the right to confidentiality," "the right to retain representation," and "the right to a fair and just tax system." The first TBOR, enacted in 1988, placed important limitations on the IRS's collection practices. Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, §§ 6226–6247, 102 Stat. 3342, 3730–52 ("TBOR 1", current version in scattered sections of the I.R.C.). For example, TBOR 1 restricted when and how the government could seize property. *See id.* §§ 6236–6238, 102 Stat. at 3737–43. It gave taxpayers the right to enter into an installment agreement to pay outstanding balances over time if they could not afford to pay all at once. *Id.* § 6234, 102 Stat. at 3735–36. It barred the IRS from evaluating its employees based on their tax enforcement results, specifically prohibiting a quota system for levies and seizures.

Over the weeks leading up to October 15, 2018 and the months thereafter, leading up to January 19, 2019, and continuing thereafter, Plaintiff received repeated harassing calls to his home and office from IRS collection personnel and received collection notices (*i.e.*, the CP504 Notice of Intent to Levy) threatening imminent collections, liens and levies, if tax debts were not satisfied. Am. Compl. ¶¶ 16, 32. The amounts of these debts (*i.e.*, that they were "hundreds of thousands of dollars") were disclosed to the Plaintiff's staff, bank, and attorney colleagues as well as his wife. Threats were made to Plaintiff's staff that their jobs might be in jeopardy. Manchanda Aff. ¶ 12. One of Plaintiff's banks, concerned by calls made to them by IRS personnel, closed Plaintiff's account. *Id.* at ¶ 13. IRS personnel contacted Plaintiff's clients with no legitimate collection aim, with the vindictive purpose of forcing Plaintiff out of business. *Id.* at ¶ 14. IRS personnel also harassed and intimidated Plaintiff's wife to damage their marital relationship. *Id.* at ¶ 15. In sum, while there might have been some legitimate collection purpose to contacting the taxpayer and his staff (but not in the abusive manner in which collection activity was waged), there was no nexus between tax collection and chasing away Plaintiff's clients, molesting his banking relationships, and intruding into his marriage, which were purely malicious, punitive and vindictive acts.

## LEGAL FRAMEWORK

### I.   Standard on a Motion to Dismiss

Plaintiff agrees with the standard of review submitted by Defendant.

### II.   Relevant Statutes

26 U.S.C. § 7433 allows taxpayers to bring a civil action for damages resulting from certain unauthorized actions taken to collect taxes. The provision, originally passed in 1988 as part of the

---

*Id.* § 6231, 102 Stat. at 3734. It provided that the IRS must release a levy if the levy is causing a taxpayer financial hardship. *Id.* § 6236(f), 102 Stat. at 3740. These statutory limitations on the collection practices of the IRS, foundational to recognizing different levels of ability to pay, are now so familiar that perhaps today's advocates take them for granted in their work with low-income taxpayers.

Omnibus Taxpayer Bill of Rights, Pub. L. 100-647, 102 Stat. 3730, was amended in 1996 as part of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452. Among other things, the amendment raised the statutory cap on damages from $100,000 to $1,000,000. *See* 26 U.S.C. § 7433(b). It did not, however, alter the standard of liability expressed in the statute. *See id.* § 7433(a). Both provisions were passed by Congress to provide remedies for taxpayers **"against an overzealous officialdom."** See *McMillen v. United States Dep't of Treasury*, 960 F.2d 187, 190 (1st Cir. 1991) (quoting *Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985)) (Emphasis added).

There is no need here to provide additional detail as to the Federal Tort Claims Act ("FTCA") or 26 U.S.C. § 7431, as these are addressed in detail herein.

## ARGUMENT

### I.    Plaintiff's Section 7433 Claim

#### a.   Plaintiff Properly Exhausted Administrative Remedies

Section 7433 specifies that a "judgment for damages shall not be awarded … unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff with the [IRS]." 26 U.S.C. § 7433(d)(1).  The implementing regulation requires that the administrative claim be directed to the district or area director in the district in which the taxpayer resides or the district in which the notice of federal tax lien was filed. *See* 26 C.F.R. § 301.7433-1(e).  The administrative claim must put the Internal Revenue Service on notice of (1) the name, current address, current telephone numbers, and taxpayer identification number; (2) the grounds for the claim; (3) a description of the injuries incurred by the taxpayer; (4) the dollar amount of the claim, including any damages not yet incurred but that are reasonably foreseeable; and (5) the signature of the taxpayer. 26 C.F.R. § 301.7433-1(e)(1)-(2).

Administrative remedies may be exhausted in one of three ways: (1) ***once a decision is rendered on the administrative claim*** (assuming that occurs prior to the expiration of the two-year limitations period); (2) ***once the administrative claim has been pending for six months***; or (3) if the administrative claim was filed during the last six months of the two-year limitations period, at any time after the administrative claim is filed. 26 C.F.R. § 301.7433-1(d).

Here, the administrative claim accrued on January 19, 2019, when taxpayer first discovered the abusive collection practices at issue in this case; namely, that the IRS continued to pursue enforced collections by way of levy and by wrongfully harassing and intimidating the taxpayer at his place of business with "**repeated phone calls**"—by threatening his secretary, staff, banking contacts and colleagues after a properly filed OIC being filed and processed—which should have suspended all collection activity. Am. Compl. ¶¶ 18, 21, 32, 35-36.  These abusive collection practices[10] were in reckless, intentional, or negligent disregarded of the suspension of levy requirements in IRC § 6331 ("levy and distraint"), the non-disclosure provisions of § 6103 ("confidentiality and disclosure of return information"), the non-harassment provisions of § 6304 ("prohibition of harassment and abuse" prohibiting "repeated calls" and "threats"), and the no third-party disclosure provisions of § 7602 ("examination of witnesses"). A cause of action accrues when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action. 26 C.F.R. §§ 301.7432-1(i)(2); 301.7433-1(g)(2).  Here, the original OIC was filed on September 5, 2018 and the abusive collection activities reached a fever pitch between October

---

[10] "Abusive Tax Collection" under I.R.C. § 7433 is that which violates the Fair Tax Collection Practices Act ("FTCPA") and the Taxpayer Bill of Rights ("TBR").  Statutory references to specific instances of "abusive tax collection" can be found in IRC §§ 6304, 6304(b) titled "prohibition of harassment and abuse" and IRC § 7602(e)(1)-(2) (*i.e.*, IRS is responsible to notify the taxpayer in writing of its intention to contact third parties before doing so). "Abusive Tax Collection" under IRC §§ 6304(b) is also defined to expressly include: (1) threats of violence; (2) the use of profane language; (3) **repeated phone calls to annoy the taxpayer**; [and] (4) the placement of telephone calls without disclosing the caller's identity. *See* Am. Compl. ¶ 29.

15, 2018 and January 19, 2019 when the First Administrative Claim was ultimately filed. *See* Am. Compl. ¶ 33.

Pages 5-6 above address exhaustion of administrative remedies for Plaintiffs' § 7433 Claim.

### b.  Plaintiff Plead Sufficient Facts to State a Plausible Claim for Relief Under Section 7433

Defendant's primary argument is that "while Section 6331(K)(1) prohibits the IRS from making a levy while an OIC is pending, ***it does not restrain the IRS from engaging in other collection activities.***" Def's Mot. At 12.  This is simply wrong.[11]  Clearly, Defendant cannot claim that the IRS did not continue with collections because the facts plead clearly allege that they did, and thus, Defendant is left with no other choice but to attempt to justify its agents' reckless, intentional or negligent violation of 26 U.S.C. § 6331(K)(1), 26 U.S.C. § 301.7122-1(g)(1), 26 U.S.C. § 301.6331-3, 26 U.S.C. § 6103, 26 U.S.C  § 6304, and 26 U.S.C § 7602, in addition to other provisions of Title 26 and its regulations.  Defendants attempt to legitimize these violations by stunningly claiming that collections may continue while an OIC is pending—this is clearly wrong.  The pertinent regulation states that the IRS "***will not levy against the property or rights of a taxpayer who submits and offer in compromise, to collect the liability that is subject to that offer, during the period the offer is pending***." 26 U.S.C. § 301.7122-1(g)(1); 26 U.S.C. § 301.6331-3. (Emphasis added).

It is black letter law and beyond peradventure that the filing of an OIC ***halts all collection activity***.  *In re Mitchell*, 633 F.3d 1319, 1324 (11th Cir. 2011) ("A pending offer in compromise

---

[11] The sole authority cited for the proposition that "A notice of intent to levy does not constitute … prohibited collection action during the pendency of an OIC" is Polite v. U.S., 07 Civ. 1950 (CAB), 2009 WL 3166924, at *5 (S.D. Cal. Aug. 6, 2009).  The cited proposition is a ***miscite*** as the language quoted does not appear anywhere in the case.

***__halts any collection activity by the IRS__***, and [the debtor] understood this.") (Emphasis added). The Form 656, which must be submitted along with the taxpayer's OIC, plainly states on Pg. 5, Section 7 under "Other Terms" in subsection (g) that:

> "***__(g) Under section 6331(k), the IRS may levy on my property and rights to property up to the time that the IRS official signs and acknowledges my offer as pending__*** . . ."

Form 656 (Rev. 4-2021).

In an adversary proceeding in a Ch. 7 Bankruptcy Case, the United States Bankruptcy Court for the Eastern District of Pennsylvania had occasion to analyze the legislative history of the 1998 Amendments to the Internal Revenue Code which gave rise to 26 U.S.C. § 6331(K)(1) and found that the filing of an OIC suspends all collection activity until the OIC is decided. *Nader v. United States (In re Nader),* 1999 Bankr. LEXIS 1001, 42 Collier Bankr. Cas. 2d (MB) 1215, 99-2 U.S. Tax Cas. (CCH) P50,824, 84 A.F.T.R.2d (RIA) 99-5968 (hereinafter *In re Nader*, 1999 Bankr. LEXIS 1001).   There, Judge Diane Weiss Sigmund, U.S.B.J., analyzed 26 U.S.C. § 6331(K)(1) and its implementing regulations and found as follows:

> In submitting the OIC on Form 656, Debtor expressly agreed to the waiver and suspension of the period of limitations for assessment and collection while the OIC was pending. He accepted the IRS's construction of pending as stated on Form 656:
>
>> "The offer shall be deemed pending from the date an authorized officer of the Internal Revenue Service accepts taxpayer-proponent's waiver of the statutory periods of limitation and shall remain pending until an authorized officer of the Internal Revenue Service formally, in writing, accepts, rejects or withdraws the offer. If there is an appeal with respect to this offer, the offer shall be deemed pending until the Appeals office accepts or rejects the offer in writing. "
>
> The IRS made its part of the bargain clear. ***__So long as an offer in compromise has not been formally rejected or withdrawn, its pendency will cause it to suspend enforcement of collection so long as there is no jeopardy from its inaction. To the extent a formal rejection is followed by an appeal, it will also take no action so long as its collection is not placed in jeopardy. The suspension of the statute of limitations is the quid pro quo for forbearance during the pendency of the__***

==offer in compromise, including the period of the appeal.== *In re Genung*, 220 B.R. 505, 506 (Bankr. N.D.N.Y. 1998).

Plaintiff pleads sufficient facts to allege abusive tax collection under IRC § 7433.  Over the weeks leading up to October 15, 2018, and especially between October 15, 2018 and January 19, 2019, Plaintiff received a series of ***repeated phone calls*** of a harassing nature to his home and office from IRS collection personnel and began receiving new collection notices (*i.e.*, the CP504 Notice of Intent to Levy) threatening imminent collection activity, including liens and levies, if tax debts were not satisfied." *Id.* ¶ 18.  The IRS representatives and personnel from collections initiating these calls asked Plaintiff's law firm office staff who answered his phones if they knew their boss wasn't paying his taxes and owed "hundreds of thousands of dollars," in violation of 26 U.S.C. § 6103. *Id.* at ¶¶ 18, 32, 44; see also Manchanda Aff. ¶ 12.  The harassment and intimidation were severe and ongoing and were detailed in Plaintiff's prior submissions to the court as a *pro se* litigant, prior to current counsel entering its Notice of Appearance. in violation of 26 U.S.C. § 6103. *Id.* ¶ 44.  Calls were also placed to Plaintiff's bank, to some of his customers, and to local colleagues. *Id.*

These are classical abusive tax collection practices protected by the TBOR.  The TBOR was passed in 1988 to prevent these types of abusive collection practices, which are designed to harass and intimidate and to cause intentional infliction of emotional distress of such an extreme and outrageous degree that Congress had to step-in to curtail the IRS's ruthless and punitive collection tactics. TOBR was passed in large part due to the testimony of aggrieved taxpayers like Kay Council, who cast a national spotlight on the pervasive and widespread abuse of power taking place at the IRS. *IRS Implementation of Taxpayers' Bill of Rights: Hearing Before the Subcomm. on PrivateRet. Plans & Oversight of the Internal Revenue Serv. of the S. Comm. on Fin.,* 101st Cong. 18 (1990) [hereinafter *IRS Implementation of the Taxpayers' Bill of Rights Hearing*]. Kay

Council testified before a Senate Finance Committee subcommittee about the experience she and her late husband had with the IRS in the summer of 1988. *Id.* She recalled how after the IRS had audited their 1979 return, they were not issued a thirty-day notice, a ninety-day notice, or any kind of notice of assessment; the first mailing they received was a bill for $183,000.[12] *Id.* After four years of inquiring about it, the couple finally discovered that the IRS had mailed a notice of deficiency, but to the wrong address. *Id.* at 19. Eventually, and after incurring tens of thousands of dollars in attorney's fees, the couple prevailed: a federal court determined that a valid notice of deficiency had not been issued within the statutory period for assessment, meaning the tax lien against the Councils was unenforceable and they owed nothing to the IRS. *Id.*; see also *Council v. Burke*, 713 F. Supp 181, 185 (M.D.N.C. 1988). Tragically, under the weight and pressure of the IRS's overreaching and abusive collection efforts and before the court made its ruling, Mr. Council committed suicide. *IRS Implementation of the Taxpayers' Bill of Rights Hearing*, *supra* at 18. Mr. Council left Ms. Council a note instructing her to use the life insurance proceeds to pay the IRS. Shawn Pogatchnik, *IRS 'Made Me Widow,' Witness Tells Senators*, L.A. TIMES (Apr. 7, 1990).[13] Adding insult to heartbreaking injury, the lien remained on Ms. Council's credit report even after the IRS released it and her husband forfeited his life to pay an erroneous IRS debt. *IRS Implementation of the Taxpayers' Bill of Rights Hearing*, *supra* at 19.  Ms. Council became a public face for a lack of taxpayer rights when her testimony made national headlines and she famously said of her experience that she "had no rights" and that "[t]he IRS had them all." Pogatchnik, *supra*.

---

[12] *IRS Implementation of the Taxpayers' Bill of Rights Hearing* at 18.  Highlighting the way abusive or erroneous IRS collection activity becomes a crucible or a Sword of Damoclese over one's head which exerts crushing psychological pressure, the $183,000 tax bill that the Councils never even received, after the inclusion of penalties and interest had grown to a debt of $300,000 by the time the debt was overturned in court a staggering 9 years later. *Id.*

[13] http://articles.latimes.com/1990-04-07/news/mn-622_1_irs-abuses  [http://perma.cc/BF9P-F47U]  (last visited, May 4, 2021).

Unfortunately, the Council situation is not an isolated tragedy, but an all-too-common occurrence.  Because the IRS is notorious for targeting lawyers, intimidating law firm staff, levying lawyer bank accounts and sending levies to law firm clients to drive lawyers with financial problems out of business, there have been a number of well-publicized accounts of lawyers driven to suicide by overbearing IRS collection activity.  *Barron v. IRS* was a case like this one where IRS agents improperly failed to process a lawyer's OIC and engaged in outrageous and abusive collection practices directed at law firm staff, law firm clients, and law firm bank accounts, which ultimately drove the lawyer to suicide. Robin Lord, *Settlement Gives Woman Peace After Husband's Suicide*, CAPE COD TIMES (May 5, 19918).[14]  The targeting of law firm clients, in particular, and the ensuing financial devastation that caused, while collections were supposed to be suspended by a pending OIC, drove Bruce Barron to desperation. *Id.*

In *Barron v. IRS*, Cv-97-271-JD (Dist. N.H. 1998), Revenue Officer Greeley and Appeals Officer Ken Shuman engaged in outrageous conduct by Greeley continuing collection activity after a valid Offer-in-Compromise was filed and by Shuman reassuring Mr. Barron (an attorney) at an Appeals Hearing that the Barron's OIC would be accepted, but then Shuman inexplicably did not process the OIC, such that collection levies continued against the monies owed by the attorney's clients, wiping the Barrons out financially. *Id.* at *1-2.  Mr. Bruce Barron was an attorney who made a bad investment in a recycling company in the 80's and the financial toll followed him into the next decade, causing him to get behind on taxes. Lord, *supra* at 4.  Mr. Barron's accountant tried to deduct the investment loss, but the IRS audited Mr. Barron and disallowed the investment losses two years later, generating a huge tax debt. *Id.* at 5.  Eventually, Mr. Barron's tax debts

---

[14] Robin Lord, Settlement Gives Woman Peace After Husband's Suicide (Cape Cod Times, May 5, 19918), *available at* https://www.capecodtimes.com/article/19980505/news01/305059522 (last visited May 4, 2021). **"Mrs.** Barron claimed the agency began forcing her husband's law clients to pay the IRS instead of him, which humiliated him and harmed his business."

stemming from the disallowed losses grew to $330,000 in back taxes, penalties and interest, and abusive tax collection practices—targeting Mr. Barron's legal clients—caused him to get behind on his mortgage to Pelham Bank Trust Co. and to face foreclosure of his home. *Id*. at 4.

Desperate to do something about the burgeoning tax debt that was now sinking Mr. Barron's law firm, the Barrons filed their OIC in 1994 but never got a response and Greeley kept unabashedly levying assets and driving away Mr. Barron's clients with abusive IRS notices intended to sabotage his ability to earn a living. *Id.* The Barrons had their Appeals hearing in 1994, but despite a promise of acceptance of their OIC by Mr. Shuman, the Appeals and OIC units dropped the ball and never even processed the request. *Id.* Greeley maliciously continued collecting throughout 1996 even though the Barrons were unable to pay and even though the Barrons were in foreclosure on their mortgage with Pelham Bank & Trust and were in imminent danger of losing their home. *Id.* The last straw for Bruce Barron was when foreclosure proceedings were instituted against his home. *Id.* On August 6, 1996, Bruce Barron committed suicide. *Id.*

Bruce Barron had substantial life insurance policies that would be paid out after his death. *Id.* Bruce left behind a note stating that the actions of the IRS, leading to the foreclosure of his family's home, drove him to desperation and left him no alternative but to take his own life in an attempt to repay the IRS. *Id* at *3. To add insult to heartbreaking injury, the IRS finally denied the Barron's OIC shortly after Bruce's suicide, based on a policy that it ceases consideration of pending OICs after the death of a joint taxpayer. *Id.* Barron's suicide note stated, "The IRS and PBT [Pelham Bank Trust Co.] are bigger than me. [The IRS] sits and does nothing and watches you die." Lord, *supra* at 4. The IRS continued to pursue Mrs. Barron, who worked her entire life as a librarian, after her husband's suicide, foreclosing her Chatham Home, garnishing her wages, levying her retirement account, and placing liens on her husband's life insurance. *Id.* at 7. Mrs.

Barron sued the IRS under Section 7433 and after failing to prevail on a Motion to Dismiss, the IRS only then settled her case for $500,000, including releasing $400,000 of outstanding tax debt, paying her legal fees of $44,129, and releasing the remaining liens against her property. *Id*. at 2.

The facts plead here make out a classic case of abusive collection practices in light of *Council* and *Barron*. The administrative claims are timely as addressed *supra* at Pgs. 5-6 above.

## II.    Plaintiff's Section 7431 Claim

### a.    Section 7433 Is Not the Exclusive Remedy for *Any* Unauthorized Disclosure

Defendant is absolutely correct that the exclusivity provision of § 7433 bars a § 7431 suit for unauthorized disclosure of return information when the alleged disclosure occurs in connection with tax collection activity, *Shwarz v. United States*, 234 F.3d 428, 432-33 (9th Cir. 2000). However, unauthorized disclosures unconnected with tax collection activity are still actionable under § 7431. These include intimidating and disclosing sensitive information about Plaintiff's tax liabilities, including owing "hundreds of thousands of dollars" to the Plaintiff's clients, colleagues, wife, and banker.

Section 7431 expressly states that, "If any officer or employee of the United States … inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States …" 26 U.S.C. § 7431.

Section 6103 expressly states that, "no officer or employee of the United States, shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee". 26 U.S.C. § 6103.

Further, Section 6103 defines "return information" to include, among other items, "a taxpayer's identity, payments, ***liabilities***, net worth, ***tax liability***, ***deficiencies***, or with respect to

the determination of the existence, or ***possible existence, of liability (or the amount thereof)*** of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A) (Emphasis added).

A taxpayer may file a civil damages action for unauthorized inspection or disclosure of returns and return information where disclosure occurs outside of the context of the collection activities addressed in section 7433, subject to the limitations set forth in the Code. 26 U.S.C. § 7431(a)(1); *Shwarz v. United States*, 234 F.3d 428, 432-33 (9th Cir. 2000).

Although Section 7433 is now the exclusive remedy for abusive tax collection, Section 7431 actions may still be brought in other contexts where the disclosures are not in connection with "collection" of taxes. See, *e.g.*, *Shwarz*, *supra,* 234 F.3d at 433 (noting that section 7431 actions can be brought for "disclosures that occur in connection with the determination of tax liability"); *Barrett v. United States*, 51 F.3d 475, 477-80 (5th Cir. 1995) (holding that IRS was liable under section 7431 where IRS agent sent letter to 386 patients of plaintiff's medical practice unlawfully disclosing that plaintiff was under criminal investigation); *Jones v. United States*, 9 F. Supp. 2d 1119, 1122-25 (D. Neb. 1998) (awarding damages under section 7431 where IRS criminal investigator unlawfully disclosed plaintiff's tax information to a confidential informant for his protection and informant then misused the information); *Ward v. United States*, 973 F. Supp. 996, 1000-04 (D. Colo. 1997) (awarding damages under section 7431 where IRS employees unlawfully disclosed plaintiff's tax return information on a radio talk show, in a fact sheet provided to a news journal, and in a letter to a newspaper editor).

Here, Plaintiff plead factual allegations pertaining to the unauthorized disclosure of return information as well as disclosures that are squarely outside of the scope of Section 7433. Specifically, Plaintiff alleged the disclosures of return information, namely the disclosure of the

existence of federal tax liabilities and the collections actions to enforce same against the Plaintiff and his business, to Plaintiff's wife for the purpose of damaging the Plaintiff's personal relationships and placing a toll on his marriage. *See* Am. Comp. ¶ 18, 21, 44, 48.  Similar actions were taken with regard to Plaintiff's clients, colleagues and banking relationships, which were unauthorized disclosures that have no nexus to the collection of tax.

### b.   Plaintiff Plead Sufficient Facts to Allege Unauthorized Disclosure

Contrary to Defendant's contentions, Plaintiff has plead factual allegations supporting his § 7431 unauthorized disclosure claims. Defendant states that Plaintiff's factual allegations are "vague and conclusory and fail to identify any specific acts of unauthorized disclosure or describe the details of any of the alleged disclosures" and that Plaintiff failed to meet the elements of a claim under Section 7431. *See* Def. Mot. at 17, ¶ 2-3.

Defendant blatantly ignores the specific instances plead in Plaintiff's Amended Complaint including calls demanding payment of tax debts, as is common practice of IRS Revenue Officers, made to his place of employment to his secretarial staff, as well as disclosure of the existence of a tax liability to Plaintiff's wife, who was not individually responsible for the relevant tax year liabilities. Am. Comp. ¶¶ 18, 21, 44, 48.  The disclosure to Plaintiff's wife, clients and colleagues have no rational relationship to collecting the taxes owed, and cannot be justified as within the scope of legitimate collection activity. *Id.*

When accepting all well-pleaded allegations contained in the complaint as true and drawing all reasonable inferences in favor of Plaintiff, there is no question that the disclosure of the existence of a taxpayer's federal tax liabilities to his wife, clients, colleagues and his bank are all unauthorized disclosures in violation of Section 6103.

### III.    Plaintiff's FTCA Claim Is Actionable

a.   **Plaintiff's FTCA Claim is Not Barred by 28 U.S.C. § 2680(c)**

A taxpayer who is injured by actions of the United States Government, stemming from agency action by the IRS, including but not limited to "abusive tax collection" can recover for their injuries in tort, subject to the limitations in the Federal Tort Claims Act ("FTCA").

26 U.S.C. § 2680(c) statutorily exempts "any claim arising in respect of the assessment or collection of any tax."  The exemption is not without limits and does not cover actions by an IRS agent that are not aimed at tax collection but instead have "no realistic nexus to the function of assessing or collecting taxes," but which are nonetheless undertaken "sufficiently within the scope of [the agent's] employment to give rise to a [tort] action against the United States."

A number of activities plead are not aimed at tax collection at all and have "no realistic nexus to the function of assessing or collecting taxes," including: (1) repeatedly calling Plaintiff's wife, disclosing liabilities in the "hundreds of thousands of dollars" to her and using inflammatory language like your husband is a "bad man"; (2) approaching Mr. and Mrs. Manchanda at a restaurant near Lincoln Center to intimidate them; (3) telling Plaintiff's law firm staff he owed "hundreds of thousands of dollars" which constitutes an unauthorized disclosure made out of malice and spite; (4) calling Plaintiff's clients to ask if they knew about this tax problem, similar to what was done in *Barron*; and (5) calling Plaintiff's bank, colleagues and clients and asking them if they knew about Plaintiff owing "hundreds of thousands of dollars."  This type of harassment, intimidation and abuse is punitive and confiscatory and is in no way aimed at legitimate tax collection.  Rather, these below-the-belt and illegal practices were designed to disrupt plaintiff's marriage, alienate Plaintiff's staff, cost Plaintiff business, and damage Plaintiff's professional relationships.  These are not legitimate collection tactics, but abusive collection practices actionable under the FTCA.

In *Johnson v. Sawyer*, 980 F. 2d 1490 (5th Cir. 1981) the Fifth Circuit upheld a nearly $11,000,000 District Court verdict against the United States Government which determined that the IRS violated 26 U.S.C. § 6103 and committed Intentional Infliction of Emotional Distress by disclosing confidential information about a plea agreement for a criminal federal tax investigation which caused direct and consequential damages to Plaintiff Johnson in the amount of $5,902,117 for the loss of the taxpayer's C-Suite Executive Position (calculated as $3,675,917 of lost earnings plus $1,1542,492 of lost pension, plus $664,208 of lost deferred compensation) together with $5,000,000 of emotional distress damages. Id. at 1492-1496.   Critical to the 5th Circuit's affirmation of the trial verdict on appeal was that the criminal proceedings were held privately by agreement of the government and defense counsel and the plea agreement specifically required that the reading of the criminal information, arraignment and sentencing be conducted simultaneously in a closed court room on a Friday afternoon and that no press release would be published or released and that Johnson's name and address would be altered in the official record, and that all of this was agreed to by the Government in light of the fact Johnson had kept his employer, American National, and its Board apprised of the issue and would be able to keep his employment so long as no "public scandal" arose out of the resolution of the tax investigation. Id. at 1493.   Nonetheless a press release was issued by AUSA Powers that is excerpted at 1493, fn 7 and read:

> "INSURANCE EXECUTIVE PLEADS GUILTY IN TAX FRAUD CASE
> GALVESTON, TEXAS—In U.S. District Court here, April 10, Elvis E. Johnson, 59, plead [six] guilty to a charge of federal tax evasion.  Judge Hugh Gibson sentenced Johnson, of 25 Alder Circle, to a six-month suspended prison term and one-year supervised probation.  Johnson, an executive vice-president for the American National Insurance Corporation, ***was charged in a criminal information with claiming false business deductions and altering documents involving his 1974 and 1975 income tax returns.*** In addition to the sentence, Johnson will be required to pay back taxes, penalties and interest." (Emphasis added).

*Id.* at 1493.  Plaintiff Johnson **lost his job and employment benefits as a result**, **was embroiled in public scandal**, and **had his reputation irreparably damaged, resulting in substantial emotional distress**. *Id.*  The <u>Johnson</u> Court considered the exemption for "assessment and collection of tax" under 26 U.S.C. § 2680(c), found it inapplicable, and discussed its contours in detail.  The 5th Circuit stated that "[t]o argue that the actions of the IRS officers involved with the Johnson news release were casually connected to the tasks of assessing or collecting taxes strains credulity to the breaking point." *Id*. at 1503.  The 5th Circuit described the government actions above as "trophy hunting" [*Id*. at 1498] and found that "[no] realistic nexus to the function of assessing or collecting taxes [existed]." *Id*.  The 5th Circuit gave a nod to the standard in Cappozoli (*Cappozoli v. Tracey*, 663 F. 2d 654 (5th Cir. 1992) and said, "In Cappozzoli [sic] v. United States, we stated that 'an IRS agent could engage in tortious conduct sufficiently removed from the agents official duties of assessing or collection taxes as to be beyond the scope of Section 2680(c), and at the same time sufficiently within the scope of his employment to give rise to an action against the United States.' Today we consider such a situation." *Id.* at 1504.  As in <u>Johnson v. Sawyer</u>, 980 F. 2d 1490 (5th Cir. 1981), the actions taken by the IRS in this case had no nexus to the collection of tax, but were undertaken by agents of the IRS sufficiently within the scope of their employment to give rise to an action against the United States."

Here, the IRS Agents familiar with this matter knew that Plaintiff lacked the ability to pay and was suffering from an economic hardship, and if they referred to the codes in the IRS system, would have readily identified a Suspension of Levy hold.

Nonetheless, whether negligently or recklessly, IRS personnel called and harassed Plaintiff's secretary and other office staff with no relation to any collection aim, disclosing confidential tax information in violation of 26 U.S.C. § 6103.  Calls were also placed to Plaintiff's

bank, to some of his clients, and to legal colleagues.  Tax matters were also discussed with

Plaintiff's wife Sylwia, who is not liable for or granted Power-of-Attorney to discuss such matters

with IRS personnel.  Aside from embarrassment and humiliation, these actions by the IRS caused

real damage to Plaintiff's reputation, embroiled him in public scandal, and caused discord in his

marriage.  Plaintiff had office staff deeply concerned about their jobs, had clients asking questions,

and had to change his banking relationships a number of times. Am. Compl. ¶ 44.

This extreme and outrageous conduct by IRS Agents had "no realistic nexus to the function

of assessing or collecting taxes," but which are nonetheless undertaken "sufficiently within the

scope of [the agent's] employment to give rise to a [tort] action against the United States."

### b.  Plaintiff Exhausted Administrative Remedies

Pages 5-6 and 9-11 herein address exhaustion of administrative remedies, which is not

seriously in dispute for the FTCA Claim.

### c.  Plaintiff States a Viable Claim for Negligent or Intentional Infliction of Emotional Distress Under New York State Law

Plaintiff's FTCA claim is not barred by sovereign immunity because Plaintiff clearly has

established a claim for intentional infliction of emotion distress under New York State law.

"To survive a motion to dismiss, plaintiff's allegations must satisfy the rule set out in Restatement

of Torts, Second, which was adopted in *Fischer v Maloney*, 43 NY2d 553, 557, 373 N.E.2d 1215,

402 N.Y.S.2d 991 (1978)): 'One who by extreme and outrageous conduct intentionally or

recklessly causes severe emotional distress to another is subject to liability for such emotional

distress' (§ 46, subd [1])." *Morris v. Rochdale Vil., Inc.*, 2011 N.Y. Misc. LEXIS 5969, *15, 2011

NY Slip Op 3315(U), 7-8 (Queens Cty 2011); see also *Lane v. Marine Midland Bank, N.A.* 112

Misc. 2d 200, 203, (1982) (whether a jury could find that a creditor's conduct was "outrageous",

is controlled by *Long v Beneficial Fin. Co*., where a complaint alleging planned harassment of a like nature was not dismissed.)

Accordingly, in *Long v Beneficial Fin. Co*., the facts are as such: Long was indebted to the defendant for approximately $1,500 and had been unable to make payments thereon. *Hagie v. GMC*, 1999 U.S. Dist. LEXIS 5227, *13, 1999 WL 222607 (citing *Long v Beneficial Fin. Co*., 39 A.D.2d 11, 330 N.Y.S.2d 664 (App. Div., 4th Dept. 1972).  From the summer of 1969 through February 1970, the defendant regularly called Long at her place of employment, contacted her landlord, friends and relatives and visited her home. *Id.*  Allegedly as a result, Long suffered a heart attack in February 1970. *Id.* Subsequently, the defendant continued to "harass, intimidate, annoy and embarrass" her, allegedly causing her to suffer a second heart attack three months later. *Id.*

The Appellate Court ruled that Long had sufficiently stated a claim for "intentional infliction of mental distress" because the defendant's conduct was "designed to cause the plaintiff severe mental distress and was done with the vicious and malicious belief that it would cause plaintiff to make payments in excess of what she could afford." *Hagie v. GMC*, 1999 U.S. Dist. LEXIS 5227, *14, 1999 WL 222607 (citing *Long v Beneficial Fin. Co*., 39 A.D.2d 11, 330 N.Y.S.2d 664 (App. Div., 4th Dept. 1972).

Here, contrary to Defendant's assertions, and akin to the facts in *Long v Beneficial Fin. Co*., Plaintiff clearly has alleged harassing collection acts by the IRS agents that amount to "extreme and outrageous" conduct.  Moreover, the Complaint alleges that Plaintiff suffered physical and emotional stress from the IRS's actions, which resulted in personal injuries, including a heart attached and clinical anxiety.

Additionally, contrary to Defendant's assertions, "recklessly" causing distress *is* enough to establish the intent prong for an IED claim. See *Anonymous B. v. Anonymous R.*, 37 Misc. 3d 756, 763, 2012 N.Y. Misc. LEXIS 4407, *13 NY Slip Op 22259, 5-6, 2012 WL 4040346 (1962) (stating that an IIED cause of action has four elements: (1) extreme and outrageous conduct; (2) intent to cause, or a ***reckless*** disregard of a substantial probability of causing, severe emotional distress . . ." (emphasis added).  Moreover, the excerpt cited from *Green v. Leibowitz* does not conclusively, or even generally, state that negligent or reckless actions are not enough to establish the intent prong for an IIED claim.

## <u>CONCLUSION</u>

For the reasons set forth therein, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss and allow this case to proceed through discovery to a trial on the merits.

Dated: May 5, 2021

Respectfully submitted,

*/s/ John P. Fazzio*
JOHN P. FAZZIO ESQ.
305 Broadway, 7th Floor
New York, NY 10007
Phone: (201) 529-8024
Fax: (201) 529-8011
Email: jfazzio@fazziolaw.com
*Attorneys for Plaintiff*

25